UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

RICKEY GIVENS                                                                                              PLAINTIFF
ADC #143148

V.                          Case No. 4:21-CV-00847-KGB-BBM

KEVIN THOMAS                                                                                              DEFENDANT

### RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to Chief United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Chief Judge Baker may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

I.      **INTRODUCTION**

On September 23, 2021, Plaintiff Rickey Givens ("Givens"), a prisoner in the Wrightsville Unit of the Arkansas Division of Correction ("ADC"), filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. (Doc. 2). After retaining counsel,[1] Givens filed an Amended Complaint. (Doc. 9). The Court screened the Complaint and Amended Complaint in accordance with the Prison

---

[1] Attorney Matt Kezhaya entered his appearance for Givens on October 7, 2022. (Doc. 5).

Litigation Reform Act ("PLRA") and allowed Givens to proceed with his claims of excessive force, assault, battery, and outrage against Kevin Thomas ("Thomas"). (Docs. 4, 13). All other claims against all other defendants were dismissed without prejudice. *Id.*

On January 3, 2024, Thomas filed a Motion to Dismiss for Lack of Jurisdiction, arguing that Givens failed to plead that he exhausted his administrative remedies. (Doc. 33). Givens responded on January 12, 2024, claiming that he *did* exhaust his administrative remedies and, as proof, attached Grievance WR-21-00376. (Docs. 34, 34-1). On January 29, 2024, Thomas filed a reply, clarifying that Givens failed to properly exhaust his administrative remedies because he did not appeal Grievance WR-21-00376 through the final step of the ADC's grievance procedure. (Doc. 35).

Because Givens responded to the Motion with information outside the pleadings, the Court converted Thomas's Motion to Dismiss into a motion for summary judgment (hereafter, "Motion for Summary Judgment"). (Doc. 36); FED. R. CIV. P. 12(d). The Court also requested additional briefing from the parties. *Id.* Specifically, the Court requested that Thomas file a supplemental brief including, at a minimum, a copy of the ADC's grievance procedure and explaining how Givens failed to comply with that procedure. *Id.*

Thomas submitted his Supplemental Brief on March 17, 2023. (Doc. 37). Givens was allowed fourteen days to respond. (Doc. 36 at 2). To date, Givens has not submitted any supplemental briefing, and the time to do so has passed. Thus, Thomas's Motion for Summary Judgment is ripe and ready for disposition.

## II. DISCUSSION[2]

In support of his Motion for Summary Judgment, Thomas argues that Givens failed to exhaust available administrative remedies before filing this lawsuit, as required by law. (Docs. 33, 37). Specifically, while Thomas acknowledges that Givens filed a grievance relevant to the claim alleged in this case, he argues Givens failed to complete the final step of the grievance procedure, thereby failing to exhaust his administrative remedies. (Doc. 37 at 2–3). In Response, Givens argues that administrative remedies have been exhausted and attached copies of grievance WR-21-00376. (Doc. 34).

### A.   The PLRA's Exhaustion Requirement

The PLRA requires prisoners to exhaust all available administrative remedies prior to filing a § 1983 action. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Muhammad v. Mayfield,* 933 F.3d 993, 1000 (8th Cir. 2019). In order to do so, prisoners must fully and properly exhaust their available administrative remedies *as to each claim* that is later raised in a § 1983 action and complete the exhaustion process *before* initiating the § 1983 action. *Jones v. Bock*, 549 U.S. 199, 211, 219–20, 223–24 (2007); *Woodford*, 548 U.S. at 93–95; *Burns v. Eaton,* 752 F.3d 1136, 1141–42 (8th Cir. 2014); *Johnson v. Jones*, 340 F.3d 624, 626–28 (8th Cir. 2003) ("Under the plain language of section

---

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* FED R. CIV. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court…If exhaustion was not completed at the time of filing, dismissal is mandatory.") (emphasis in original). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90. Thus, to satisfy the PLRA, a prisoner must comply with the exhaustion requirements of the incarcerating facility before he can properly bring a claim in a § 1983 action.

Thomas attached ADC Administrative Directive 19-34 ("AD 19-34") to his Supplemental Brief (Doc. 37-1), which details the ADC's administrative process for the submission and resolution of inmate problems and complaints. AD 19-34 requires prisoners to raise their complaints through a three-step grievance procedure. (Doc. 49-1 at 4–22). First, the prisoner must file a "Step One" informal resolution within fifteen days of each incident to a designated "Problem Solver." AD 19-34 at § IV(E). The Step One informal resolution must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses." *Id.* In other words, at Step One, the prisoner must name each defendant and explain their involvement in the complaint.

Second, the prisoner must file a "Step Two" formal unit-level grievance, raising his complaint within three working days of the denial of the informal resolution. *Id.* at § IV(F). The Step Two grievance must contain "an explanation [of] why the inmate considers the informal resolution unsuccessful." *Id.* at § IV(F)(1). Finally, the prisoner must file a "Step Three" appeal to the appropriate ADC Chief Deputy/Deputy/Assistant Director within five working days of the Step Two decision. *Id.* at §§ IV(G).

4

In connection with each claim, the prisoner must: (1) "specifically name each individual involved;" (2) state only one problem or issue per grievance; and (3) include a "brief statement that is specific as to the substance of the issue or complaint to include the date, place [and] personnel involved or witnesses." *Id.* at § IV(C)(4), (D)(2), & (E)(2). The ADC's policy cautions prisoners that, if they fail to "exhaust their administrative remedies as to all defendants at *all levels* of the grievance procedure … their lawsuits or claims may be dismissed" under the PLRA. *Id.* at § IV(N) (emphasis added); *see also id.* at § IV(C)(4) & (D)(2).

In *Booth v. Churner*, the United States Supreme Court made clear that the PLRA requires inmates to complete *all levels* of the administrative process prior to filing a lawsuit, even if the process does not permit an award of money damages. 532 U.S. 731, 739 (2001) (emphasis added). The ADC's inmate grievance procedure specifically advises inmates that they, "must fully exhaust the grievance procedure as a prerequisite to pursuing any legal action related to the subject matter of the grievance." (Doc. 37-1 at 5 ¶ 4). Further, the ADC inmate grievance procedure provides, "[i]nmates are hereby advised that they must exhaust their administrative remedies as to all defendants at *all levels* of the grievance procedure before filing a Section 1983 lawsuit and Claims Commission claim." *Id.* at 19 (emphasis added). Inmates are also instructed to "attach a copy of the Chief Deputy/Deputy/Assistant Director's response to any petition or complaint; otherwise, the court or commission may dismiss the case." *Id.*

B.  **Grievance WR-21-00376**

On August 29, 2021, Givens filed a Unit Level Grievance (Step One), complaining that he was "attacked by Officer Tomas [sic] and he hit me and my cell mate with a belt." (Doc 34-1 at 3). On August 30, 2021, Givens received a response from a lieutenant, stating that "[t]he incident between you and officer Thomas has been investigated and you have nothing to fear. Officer Thomas will not be allowed to work in any facility you are housed in." *Id.*

Unsatisfied with this response, Givens appealed the decision (Step Two) to the Warden, stating the following:

> [O]n 8-26-21 I was attacked by Officer Tomas a officer for adc I don't feel safe in any facility in the adc in fear of retaliation because this officer has 14 years employment with adc and may have friends or co-workers who will retaliate in physical and punitive ways This is a very serious matter and I have a parole screening on 8-31-21 I am a class I inmate please help me before something else happens. I'm just now received a grievance after asking for several days and was told by Stg. Bryant there were no more on the compound.

*Id.* On November 15, 2021, the Warden responded that the incident in question—the Officer Thomas attack—had been investigated and was found in Givens's favor. *Id.* at 1. The Warden went on to state, "I find your grievance has merit but considered resolved because the officer in question no longer work with ADC." *Id.* In response to Defendant's Motion for Summary Judgment, Givens attached Grievance WR-21-00376 (Doc. 34-1) but did not include with that exhibit any evidence of an appeal to the appropriate Chief Deputy/Deputy/Assistant Director, as required by Step Three of the ADC Grievance Procedure, and Givens does not claim to have filed such an appeal.

6

Based on the record before the Court, therefore, Givens failed to exhaust Grievance WR-21-00376 against Thomas through all three levels of the ADC grievance procedure. While his grievance was found to have merit at Step Two, the Warden also stated that he found his grievance to be "resolved." *Id.* If Givens was not satisfied with the Warden's response and resolution of the matter, he should have appealed the response within five working days to the Chief Deputy/Deputy/Assistant Director before filing this lawsuit. (Doc. 34-1 at 1). He did not. Failure to appeal his grievance past Step Two leaves his claim unexhausted. *See Lewis v. Kelley*, No. 2:19-CV-00084-KGB, 2022 WL 3716257, at *2 (E.D. Ark. Aug. 29, 2022) (finding that ADC prisoner's failure to appeal a favorable result "through all levels of the ADC grievance procedure" warranted dismissal for failure to exhaust administrative remedies).

### III.  CONCLUSION

In sum, viewing the record in the light most favorable to Givens, there is no genuine dispute as to any material fact. Thus, Defendant's motion for summary judgment should be granted, and Givens's claims should be dismissed without prejudice for failure to exhaust available administrative remedies.

IT IS THEREFORE RECOMMENDED THAT:

1. Defendant's Motion for Summary Judgment (Doc. 33) be GRANTED.

2. Given's excessive force claim against Thomas be DISMISSED, without prejudice, for failure to exhaust available administrative remedies.

3. Judgment be entered accordingly.

DATED this 29th day of April, 2024.

*Benecia Moore*
_____
UNITED STATES MAGISTRATE JUDGE